UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NINO DELPIANO,

    Petitioner,

v.

    Case Number 16-11411
    Honorable David M. Lawson

DAVID BERGH,

    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Nino Delpiano was convicted of second-degree murder and felony traffic offenses after his vehicle struck and killed a Taylor city police officer who was assisting a motorist on the shoulder of a freeway. The trial court sentenced him as an habitual offender to concurrent prison terms totaling 45 to 67-½ years. Delpiano challenges his convictions in a petition for a writ of habeas corpus filed under 28 U.S.C. § 2254, alleging claims concerning the sufficiency of evidence and the effectiveness of his trial and appellate counsel. Because Delpiano has not demonstrated that his convictions violate the Constitution or applicable federal law, the Court will deny his petition.

I.

Delpiano struck and killed a police officer who was assisting a couple on the right shoulder of I-94 in Taylor, Michigan on September 7, 2010. The Michigan Court of Appeals summarized the facts in its opinion on direct appeal as follows:

> At trial, Delpiano's trial lawyer conceded that Delpiano struck and killed [Lieutenant Daniel] Kromer while driving without a valid license, failed to stop at the scene of the accident, and failed to use due caution when passing a stationary emergency vehicle. He even conceded that the jury might reasonably find that Delpiano's actions were grossly negligent and, therefore, warranted finding

Delpiano guilty of the lesser offense of vehicular manslaughter. However, he argued that the evidence would show that Delpiano's actions did not amount to second-degree murder and, as such, he asked the jury to find Delpiano not guilty on that count.

Timothy Justice testified that he was an auxiliary police officer with the Taylor Police department and that, on the day at issue, he was riding with Kromer in a fully marked police cruiser. They were on I–94 at around 8:45 pm when Kromer, who was driving, noticed a car parked on the shoulder of the opposite side of the highway. Kromer left the highway at the next exit and reentered I–94 on the same side as the stranded car. Justice said that he activated the cruiser's emergency lights after Kromer pulled up behind the car. Justice explained that their police cruiser was the "most lit up vehicle on our line"; it had red and blue strobe lights overhead, white strobe lights on the trunk, and flashing break lights.

After they parked, they both approached the passenger's side. The car had a driver and a passenger who were both foreign. Justice said that he surmised that they were trying to get to the airport, but he was having difficulty understanding them because of their broken English and the traffic noise. At some point, Kromer walked behind the car to the driver's side. Justice explained that the stranded car was parked "approximately three feet away from the first line of traffic"; indeed, Justice stated that he was standing in the weeds as he tried to speak with the passenger and he agreed that there was a "good strip of shoulder" for Kromer to stand on.

Karen Schmitt testified that she and her husband, Greg Schmitt, were driving on I–94 at around 8:45 pm: "it was not dark, but it was getting [to be] dusk." She was driving in the rightmost lane and noticed that there was an emergency vehicle with its lights on about 2 to 3 hundred feet ahead. She stated that the traffic was "busy," but after a semi flashed his lights, she was able to merge into a middle lane. She stated that the traffic was moving at about 75 miles per hour. Gregg Schmitt testified that, after they saw the emergency lights, his wife slowed and merged into a middle lane. He said he could see a police officer standing by the driver's side door of a car parked on the shoulder.

Steven Digna testified that he was driving behind a car that he later learned was occupied by the Schmitts. As he entered I–94, he noticed an emergency vehicle with its lights on up ahead. He said that the emergency vehilce was about "100 yards" ahead. There was a semi coming up on their side, which merged over so that they could get onto the highway. Digna said that the Schmitts then merged over and, after they moved ahead, he too merged over. They were both in front of the semi. He then set his cruise control to 75 miles per hour. He could see a police officer hunched over with his hand on the window of a car parked on the side of the highway.

Digna testified that he saw a white car that was two lanes from the right. That car merged over behind the semi and into the rightmost lane — directly behind Digna

— just as Digna was merging over to the semi's lane. That car then accelerated past him in the rightmost lane: "Within a matter of seconds he had gained three to four car lengths, maybe more."

Digna saw the driver pass him "in a dead open straight line," but he then "swerved at the officer quite directly" and struck him. Digna said that he had "seen absolutely no brake lights"; the white car just ran into the officer "and then corrected its path." Justice testified that he could see Kromer's white shirt through the driver's window and then "he didn't see the white shirt" anymore. He also noticed that the driver's side mirror was "just gone." He looked and saw that Kromer was lying on the shoulder approximately thirteen to fifteen feet in front of the stranded car. Karen and Gregg Schmitt both testified that they saw a car hit Kromer and that he flew into the air and landed on the side of the road.

Karen Schmitt testified that, after she saw Kromer get hit, she immediately pulled over. She was able to do so because there was no one driving in the lane behind the white car. Digna also pulled over and both Karen Schmitt and Digna saw the white car exit at the next ramp.

Testimony established that Kromer's body left scuff marks along the side of the stranded car from his "uniform and equipment striking the vehicle" and that there weren't any pre-crash skid marks. Another witness testified that she saw Delpiano driving shortly after the accident and noticed that his right headlight was out, his windshield was "completely shattered" and the A-arm, which is the part that "goes from the roof to the hood, was actually bent and crinkled." (The witness explained that she knew what an A-arm was because she worked in quality control at the Dearborn Truck Plant.) She said she took down his license, which later testimony established was used to identify Delpiano as the driver.

The medical examiner testified that Kromer died instantly. He stated that Kromer had injuries from head to toe, including tearing to the scalp that made his skull visible with the naked eye, trauma to the skin that was consistent with "the body violently jackknifing and overstretching of the skin," numerous abrasions and scrapes, tears in the left ventricle, the spleen, and bronchia. The medical examiner also observed that Kromer had broken leg bones, that his rib cage was completely broken on the right, and that his spine was broken in two places. He said that "the base of the skull was completely separated from the upper neck" in a way that was typical of "a violent type of whiplash injury." The medical examiner listed the cause of death as "multiple injuries."

*People v. Delpiano*, No. 304037, 2012 WL 3046157, at *1-3 (Mich. Ct. App. July 26, 2012)

(footnote omitted).

A Wayne County, Michigan jury convicted Delpiano of second-degree murder, Mich. Comp. Laws § 750.317, operating a motor vehicle while his license was suspended or revoked causing death, Mich. Comp. Laws § 257.904(4), failure to stop at the scene of an accident resulting in death, Mich. Comp. Laws § 257.617(3), and failure to use due caution when passing a stationary emergency vehicle causing death, Mich. Comp. Laws § 257.653a(4).

Following his convictions and sentencing, Delpiano filed a direct appeal arguing that the evidence was not sufficient to support the convictions. The Michigan Court of Appeals affirmed his convictions and sentences, *Delpiano*, 2012 WL 3046157, and the state supreme court denied leave to appeal, *People v. Delpiano*, 493 Mich. 967, 829 N.W.2d 220 (2013). Delpiano then filed a motion for relief from judgment in the trial court alleging ineffective assistance of trial and appellate counsel. Citing Michigan Court Rule 6.508(D)(3), the trial court found that the petitioner did not establish good cause for his failure to raise the ineffective assistance of trial counsel claim on direct appeal as he did not show that appellate counsel was ineffective. The court denied the motion, *People v. Delpiano*, No. 10-010022-01-FC (Wayne Cty. Cir. Ct. June 25, 2014), and denied reconsideration. The state appellate courts also denied relief. *People v. Delpiano*, No. 325232 (Mich. Ct. App. April 9, 2015), *leave to appeal denied People v. Delpiano*, 499 Mich. 868, 874 N.W.2d 701 (2016).

Delpiano filed a timely petition for a writ of habeas corpus, asserting these claims:

I. His second-degree murder conviction cannot stand for want of sufficient evidence on the requisite element of malice.

II. Trial counsel was ineffective for failing to properly investigate and advise him in the course of plea proceedings.

III. Appellate counsel was ineffective for failing to investigate and raise the issue of ineffective assistance of trial counsel on direct appeal, as specifically requested to do so.

Pet. at 5, 10, 13.

The warden filed an answer to the petition arguing that claims two and three are subject to the defense of procedural default. The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address this procedural question. It is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419

(2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)). The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

The claims Delpiano raised in his post-conviction motion were not decided by the state appellate courts with reasoned opinions; instead they were rendered in summary orders. Nonetheless, the deference required by the AEDPA still must be afforded. "Under [*Harrington v. Richter*], '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits in the absence of any indication or state-law procedural principles to the contrary.'" *Barton v. Warden S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015) (quoting *Harrington*, 562 U.S. at 99).

A.

Delpiano first asserts that he is entitled to habeas relief because the prosecution did not present sufficient evidence on the element of malice to support his second-degree murder

conviction. In Michigan, malice is an essential element of murder and requires proof of "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v. Goecke*, 457 Mich. 442, 464, 579 N.W.2d 868, 878 (1998)). Delpiano contended in the state court, and here, that the evidence established at most that he drove in a grossly negligent manner, which does not amount to a state of mind consistent with malice, and would support a conviction of a crime no more serious than manslaughter.

The Michigan Court of Appeals considered the argument at length. After an extended discussion parsing the two concepts under state law, the court explained:

> [T]he distinction between the mens rea for manslaughter — gross negligence — and the mens rea for second-degree murder under the wilful and wanton prong is the knowledge that the actor has when he or she engages in the negligent act. If the actor knows that he or she is placing someone in danger and knows that the natural consequence is that someone will likely be killed or suffer great bodily harm, that knowledge elevates the mens rea from gross negligence to the malice sufficient to support a conviction of second-degree murder.

*Delpiano*, 2012 WL 3046157, at *4. The court then held:

> Although a reasonable jury examining the totality of the evidence might reasonably conclude that Delpiano's actions on the day at issue were merely grossly negligent, the evidence also supports a finding that he acted with wilful and wanton disregard of a known risk to others and that he knew that death or serious bodily harm was the likely result.

*Id.* at *5. The court considered evidence that traffic that evening was heavy, the lighting was dusky, and Delpiano likely was traveling in excess of 75 miles per hour. The court found persuasive evidence that

> Delpiano merged from a safe lane into the lane next to the shoulder — that is, Delpiano moved from a place of safety to a place of danger. And he did so while every other driver, including [witness] Digna, was merging into the middle lanes. There was also evidence from multiple witnesses that, not only could they see the lights flashing on the police car hundreds of feet before passing it, they could actually see officer Kromer standing next to the stranded car. Accordingly, a

> reasonable jury could find that Delpiano too saw the police car's flashing lights and saw Kromer standing on the shoulder next to the rightmost lane. A reasonable jury could also have found that Delpiano knew that his decision to cut across the lanes and proceed as he did created a very high risk that he would strike Kromer and that the likely result was death or serious bodily harm.

*Ibid.*

The court's discussion gave full voice to and proper application of the controlling federal constitutional law governing this issue. It is well established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). But on direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). That rubric "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

The state court of appeals fairly summarized the trial evidence and explained, through a lens that favored the prosecution, how a jury reasonably could view that evidence and see that Delpiano acted with malice when driving his car and striking the police officer. The appellate court's task was not to re-weigh the evidence. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th

Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The only relevant question on appeal is whether the evidence could support the jury's finding on all the elements of the crime, even if the evidence also could support a contrary conclusion. "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326). That is exactly what the court of appeals did here.

The state court faithfully applied the *Jackson* standard. It afforded the jury the deference it was due, and this Court must do likewise by deferring to the state court's reasonable decision. The state court of appeals committed no error in its assessment of the evidence, let alone one that is "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Delpiano is not entitled to a writ of habeas corpus on this claim.

B.

Delpiano next asserts that he is entitled to habeas relief because trial counsel was ineffective by giving him bad advice about a plea offer from the prosecutor. Delpiano consulted with his attorney before trial about the potential plea agreement. The plea offer, which was placed on the record, was for Delpiano to plead guilty to second-degree murder in exchange for the dismissal of the other four charges, the dismissal of the habitual offender sentencing enhancement, and a sentencing agreement of 22 to 40 years imprisonment. Describing the potential benefit to Delpiano, the prosecutor stated that the sentencing guidelines for a fourth habitual offender on the murder charge called for a minimum prison term of between 26-¼ years to 87-½ years, that the minimum term on each of the other four charges was 4 years 10 months to 19 years imprisonment, and that three of those other four charges could result in consecutive sentencing (for a total of 57

years imprisonment). Trial Tr. at 4-5, ECF No. 9-5, PageID.232-33. The statement about consecutive sentences was incorrect, *See* Mich. Comp. Laws § 769.36(1), but Delpiano acknowledges that trial counsel advised him correctly that the sentences would run concurrently. Delpiano confirmed on the record that he understood the plea offer and the potential sentences, and he stated that he wanted to go to trial.

More than three years later, Delpiano and his former girlfriend signed statements asserting that trial counsel told him that the 22-year minimum sentence offer was too steep for his crime, that Delpiano would not be found guilty of second-degree murder because there was insufficient evidence of intent to kill, that counsel did not explain the sentencing consequences if he were found guilty of the charged offenses at trial, and that he would not have rejected the plea offer if properly advised by counsel.

A violation of the Sixth Amendment right to the effective assistance of counsel is established when an attorney's performance was deficient, and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty plea. *Hill v. Lockhart,* 474 U.S. 52, 58 (1985); *Carter v. Collins,* 918 F.2d 1198, 1200 (5th Cir. 1990). The first part of the test remains the same. *Hill,* 474 U.S. at 58. However, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* at 59. In other words, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial." *Ibid.*; *Carter,* 918 F.2d at 1200; *see also Smith v. United States,* 348 F.3d 545, 551-52 (6th Cir. 2003).

Delpiano first presented these claims to the state courts in a post-conviction motion filed after his direct appeal. The state appellate courts summarily denied relief. But the Court presumes the claims were decided on the merits, applying federal law. *Barton*, 786 F.3d at 460 (quoting *Harrington*, 562 U.S. at 99).

Criminal defendants are entitled to the effective assistance of counsel during plea negotiations. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). Trial counsel can be ineffective when his erroneous advice results in the rejection of a plea offer that the defendant would have accepted if properly advised. *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012). In this case,

however, Delpiano has not shown that he was misadvised about the terms of the state's offer or his lawyer's assessment of it. First, the plea offer itself with the sentence of 22 to 40 years imprisonment was placed on the record by the parties before trial. Delpiano also was told of the sentencing guideline ranges for the second-degree murder charge and the four other charges if he were convicted at trial.

Second, there is not convincing evidence in the record that defense counsel told Delpiano that he would not be convicted of second-degree murder or that he advised him to reject the plea offer. Delpiano has not furnished any statement from counsel in support of this assertion. Conclusory allegations that lack evidentiary support do not provide a basis for habeas relief. *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (holding that bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings). The state courts could have concluded reasonably that the new-found assertions by Delpiano and his girlfriend about counsel's advice are suspect and not credible, considering their vested interest in the case. *See*, *e.g.*, *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) ("A reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause."); *Freeman v. Trombley*, 483 F. App'x 51, 59-60 (6th Cir. 2012) (discounting credibility of girlfriend's alibi affidavit submitted long after petitioner's trial). They also did not sign their affidavits for more than three years after trial. *See*, *e.g.*, *Freeman, supra; Lewis v. Smith*, 110 F. App'x 351, 355 (6th Cir. 2004) (district court properly rejected as suspicious witness's recanting affidavit made two years after trial); *Olson v. United States*, 989 F.2d 229, 231 (7th Cir. 1993) (recantation more than four years after trial was dubious); *see also McQuiggan v. Perkins*,

569 U.S. 383, 387 (2013) (stating that a court should consider "unjustifiable delay on a habeas petitioner's part . . . as a factor in determining whether actual innocence has been reliably shown").

Third, Delpiano has not shown that but for counsel's advice, he would have accepted the plea offer instead of proceeding to trial. During the plea discussions, Delpiano was informed that he faced a fourth habitual offender sentencing enhancement. With that enhancement, the sentencing guidelines called for a minimum term for second-degree murder of between 26 and 87 years. Nonetheless, he insisted on going to trial, as was his right, but he did so with eyes wide open. His lawyer might have given him an opinion on the odds of success, but in the end, the decision about whether to accept or reject a plea offer ultimately rests with the defendant, not with trial counsel. *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). Delpiano stated on the record that he understood the plea offer and the sentencing consequences of accepting or rejecting it, and then he stated that it was his desire to reject the plea offer and go to trial.

On this record, the state court's apparent conclusion that Delpiano established neither deficient performance nor prejudice did not contravene or unreasonably apply controlling federal law.

C.

In his last claim, Delpiano attacks the performance of his appellate lawyer, contending that he should have investigated and raised on direct appeal the issue of trial counsel's performance.

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner ordinarily must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687. However, it is well established that a criminal defendant does

not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

The trial court denied relief on this claim when it was presented in Delpiano's post-conviction motion. The state appellate courts rejected it as well, albeit in summary orders. Those decisions reasonably applied the governing federal law. Appellate counsel presented a well-argued claim of insufficient evidence in his appellate brief. There was nothing in the record that suggested an ineffective-assistance-of-counsel claim. This Court has determined that the claim was properly rejected by the state courts on post-conviction review. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ). Because the claim cannot be shown to be meritorious, appellate counsel was not ineffective in his handling of Delpiano's direct appeal. Delpiano is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

### III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an

unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge

Date:   July 17, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on July 17, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI